MEMORANDUM OPINION
 

 JORDAN, District Judge.
 

 I.INTRODUCTION
 

 Presently before me is a Motion, filed by defendant Compo Micro Tech (“CMT”), for Partial Summary Judgment Limiting Philips’ Damages. (Docket Item [“D.I.”] 300; the “Motion”.) For the reasons that follow, CMT’s Motion will be granted in part and denied in part.
 

 II. BACKGROUND
 

 Plaintiffs Philips Electronics North America Corporation and U.S. Philips Corporation (collectively, “Philips”) allege that defendant Compo Micro Tech (“CMT”) infringes claims 1, 3 and 4 of U.S. Patent No. 4,703,359, entitled “Universal remote control unit with model identification capability” (issued October 27, 1987) (“the ’359 patent”) and all of the claims of U.S. Patent No. 5,872,562, entitled “Universal remote control transmitter with simplified device identification” (issued February 16, 1999) (“the ’562 patent”). On April 5, 2004, I issued a memorandum opinion and order granting Philips’ Motion for Summary Judgment that CMT’s accused devices literally infringe claims 1, 3, and 4 of the ’359 patent and granting CMT’s Motion for Summary Judgment of Nonin-fringement of all of the claims of the ’562 patent. (D.I. 388, 389.) In addition, the procedural and factual background and a discussion of the technology disclosed in the patents-in-suit may be found in several other opinions and orders issued in this case.
 
 (See
 
 D.I. 351 (denying Remote Solution’s motion to dismiss for lack of personal jurisdiction); D.I. 352, 353 (granting CMT’s motion to sever and for separate trials); D.I. 376, 377 (claim construction); D.I. 390 (denying CMT’s motion for summary judgment of invalidity); D.I. 394, 395 (granting Philips’ motion for summary judgment on CMT’s affirmative defense of equitable estoppel).)
 

 III. STANDARD OF REVIEW
 

 Federal Rule of Civil Procedure 56 states that summary judgment should be granted when “the pleadings, depositions, answers to interrogatories, and admissions
 
 *DCXCIII
 
 on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c). The party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to judgment as a matter of law.
 
 Adickes v. S.H. Kress & Co.,
 
 398 U.S. 144, 151-60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The moving party also bears the responsibility of informing the court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party to “set forth specific facts showing that there is a genuine issue for trial.” Fed. R.Civ.P. 56(e);
 
 see also Anderson v. Liberty Lobby, Inc., 477
 
 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
 

 IV. DISCUSSION
 

 A.
 
 Limiting Philips’ Damages under 35 U.S.C. § 287
 

 CMT argues that, because Philips failed to mark its universal remote controls (URCs) as required by 35 U.S.C. § 287 -
 
 [1]
 
 , and because Philips never gave CMT actual notice of infringement, Philips’ damages should be limited to those that accrued after Philips filed its amended complaint naming CMT as a defendant in this case on September 19, 2002.
 
 (See
 
 D.I. 301 at 8-16.) Philips does not dispute that it failed to mark its URCs
 
 (see
 
 D.I. 307, Ex. 40; D.I. 313 at 10), but argues that it had no duty to mark with respect to the ’359 patent because it is only asserting the method claims of that patent (D.I. 313 at 6-7.) Philips further argues that CMT had actual notice of infringement before September 19, 2002, by way of letters that CMT received as early as November 17, 2000 or as late as April 2, 2002.
 
 (Id.
 
 at 11, 14.)
 

 The ’359 patent contains both method and apparatus claims.
 
 (See id.
 
 at 8.) Philips argues that, because it is only asserting the method claims of the ’359 patent, it had no duty to mark its URCs.
 
 (Id.)
 
 However, Philips’ argument fails as a matter of law. The Federal Circuit has clearly stated that “[wjhere the patent contains both apparatus and method claims.. .to the extent that there is a tangible item to mark by which notice of the asserted method claims can be given, a party is obliged to do so if it intends to avail itself of the constructive notice provisions of section 287(a).”
 
 American Medical Systems, Inc. v. Medical Engineering Corp.,
 
 6 F.3d 1523, 1538-39 (Fed.Cir.1993). In this case, Philips’ URCs are tangible items which were capable of being marked to give the public notice of the asserted method claims of the ’359 patent. Because Philips failed to so mark its URCs, Philips cannot avail
 
 *DCXCIV
 
 itself of the constructive notice provisions of 35 U.S.C. § 287(a) with respect to the asserted method claims of the ’359 patent.
 
 See id.
 

 CMT argues that it never received the actual notice of infringement, as required under 35 U.S.C. § 287, prior to Philips’ filing its amended complaint on September 19, 2002. (D.I. 301 at 11, 14.) Philips claims that CMT received notice that it was infringing the ’359 and the ’562 patents on November 17, 2000, when patent counsel for Contec Corporation (“Contec”) sent CMT a letter to inform CMT that Philips wanted to enter into a license agreement with Contec in connection with the ’359 and ’562 patents.
 
 [2]
 

 (See
 
 D.I. 306, Ex. 30; D.I. 313 at 11.) Philips also says that an April 2, 2002 letter from Philips’ intellectual property counsel to CMT provided CMT with actual notice of infringement. (D.I. 306, Ex. 31; D.I. 313 at 14.)
 

 “Section 287(a) requires a party asserting infringement to either provide constructive notice (through marking) or actual notice in order to avail itself of damages. The notice of infringement must therefore come from the paten-tee.... ”
 
 American Medical Systems,
 
 6 F.3d at 1537 n. 18 (citing
 
 Devices for Medicine, Inc. v. Boehl,
 
 822 F.2d 1062, 1066 (Fed.Cir.1987)) (“Absent notice, [infringer’s] ‘knowledge of the patents’ is irrelevant.”);
 
 accord Lans v. Digital Equipment Corp.,
 
 252 F.3d 1320, 1327-28 (Fed.Cir.2001) (notice of infringement “must be an affirmative act on the part of the patentee which informs the defendant of infringement”) (citation omitted). On November 17, 2000, Contec’s patent counsel sent CMT a letter, informing it that Philips had approached Contec regarding a possible license agreement pertaining to the ’359 and ’562 patents, and asking CMT to fill out a four-page questionnaire so Philips could “evaluate whether the [URCs] supplied by [CMT] are covered by the [’359 and ’562] patents.” (D.I. 306, Ex. 30.) This letter, sent by Contec’s patent counsel to CMT requesting information about URCs that CMT supplied to Contec, cannot constitute actual notice of infringement because it was not an affirmative act on Philips’ part informing CMT of infringement.
 

 The April 2, 2002 letter from Philips’ intellectual property counsel to Mr. Park, CMT’s director, enclosed copies the ’359 and ’562 patents for Mr. Park’s review and stated that Philips “would like to arrange a meeting within the next few weeks to discuss these patents and our license terms.” (D.I. 306, Ex. 31.) This letter also does not constitute actual notice of infringement, which requires “a specific charge of infringement by a specific accused product or device.”
 
 Amsted Industries, Inc. v. Buckeye Steel Castings Co.,
 
 24 F.3d 178, 187 (Fed.Cir.1994). The April 2, 2002 letter meets neither of those requirements.
 
 (See
 
 D.I. 306, Ex. 31.) Therefore, because Philips failed to provide constructive notice of infringement by failing to mark its URCs, and failed to otherwise provide CMT with actual notice of infringement prior to filing its amended complaint, under 35 U.S.C. § 287, Philips is only entitled to recover damages for infringement occurring after September 19, 2002. CMT’s Motion will be granted to the extent that it requests partial summary judgment limiting Philips’ damages in this manner.
 

 B.
 
 CMT’s Affirmative Defense of Lach-es
 

 In order to establish the affirmative defense of laches, CMT must prove
 
 *DCXCV
 
 that (1) Philips unreasonably and inexcusably delayed bringing suit after it knew or reasonably should have known of its claim against CMT and (2) as a result of Philips’ delay, CMT has suffered material prejudice.
 
 See A.C. Aukerman Co. v. R.L Chaides Construction Co.,
 
 960 F.2d 1020, 1032 (Fed.Cir.1992). Laches is presumed where a patentee delays bringing suit for more than six years after the date the patentee knew or should have known of the alleged infringer’s activity, measured back from the time of filing the complaint.
 
 Id.
 
 at 1034. When the delay in bringing suit is shorter than six years, the defendant must come forward with actual evidence of unreasonableness and prejudice.
 
 Id.
 
 at 1037-38.
 

 I find that partial summary judgment on CMT’s affirmative defense of laches is inappropriate in this case, because numerous issues of material fact exist. As one example, CMT argues that Philips had actual knowledge that CMT was offering a “potentially infringing universal remote for sale” as early as 1993, nine years before Philips filed suit against CMT, and thus CMT is entitled to the presumption of laches. (D.I. 301 at 19.) While it is undisputed that CMT sent Philips certain models of its remote controls in 1993 after receiving a request for a quote from one of Philips’ purchasing agents (D.I. 301 at 19; D.I. 316 at 12), it is disputed whether Philips knew or should have known at that time that CMT’s remote controls infringed the ’359 patent. CMT says that the remote controls it sent to Philips in 1993 had a label on the back “which specifically describes two methods of programming!,]” characterized by CMT as corresponding to the “direct entry” and “scanning” methods claimed by the ’562 and ’359 patents, respectively. (D.I. 331 at 4-5.) However, Philips argues that Mr. Park admitted at his deposition that “he did not know whether the samples he sent to Philips used the scan method.” (D.I. 316 at 28.) Because there are disputed issues of material fact as to whether Philips knew or should have known about CMT’s infringement of the ’359 patent pri- or to September 19, 1996, CMT’s Motion will be denied to the extent that it requests partial summary judgment on its affirmative defense of laches.
 

 An appropriate order will issue.
 

 ORDER
 

 For the reasons set forth in the Memorandum Opinion filed herewith, it is hereby ORDERED that CMT’s Motion for Partial Summary Judgment Limiting Philips’ Damages (D.I. 300) is GRANTED IN PART and DENIED IN PART. The Motion is granted to the extent that it requests partial summary judgment limiting Philips’ damages under 35 U.S.C. § 287, and such damages are limited to those accruing after September 19, 2002. The Motion is denied to the extent that it requests partial summary judgment on CMT’s affirmative defense of laches.
 

 [1]
 

 . Title 35 of the United States Code, section 287, provides, in pertinent part:
 

 § 287. Limitation on damages and other remedies; marking and notice
 

 (a) Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent” or the abbreviation "pat.”, together with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.
 

 35 U.S.C. § 287 (2004).
 

 [2]
 

 . CMT supplied URCs to Contec under a Manufacturing and Purchase Agreement dated August 6, 1998. (D.I. 306, Ex. 30.)